Thank you. May it please the Court, Counsel Brandon Williams on behalf of Appellant June Oliver, and I would like to reserve three minutes for rebuttal time. Okay. The core issue in this case is a problematic RFC, residual functional capacity, in that it fails to serve its ultimate purpose, which is to adequately convey to the same understanding to V.E. or viewing court as regarding what the claimant is ultimately able to do, notwithstanding their impairment. And the problem in this case is that looking at the RFC, specifically the portion of issue begins a third line up from the bottom with she has a mild impairment. So she has a mild impairment with short-term memory and mild impairment in her ability to concentrate. Mild is not a term appropriately used in an RFC. It's a proceeding consideration at Steps 2 and Steps 3 of the five-step evaluation. It's used to first determine severity at Step 2, and then whether the claimant meets a listing at Step 3. Now the government or the commissioner argues that you didn't preserve an objection to the sufficiency of the evidence or that the RFC wasn't supported by substantial evidence in the district court. Can you tell me that was preserved in the district court? Yes, it was, Your Honor. The plaintiff, maybe not in such specific terms. Well, I couldn't find it in such specific terms either, so tell me why you think what you did preserved it. Because the district court ultimately ruled that the RFC was sufficiently supported by medical evidence, and the propriety of the RFC and the language of the RFC, whether it adequately conveyed the claimant's limitations, was clearly an issue before the parties. Now, regarding the issue of work-related terms, the argument below encompassed that, because it was a general challenge to the sufficiency of the RFC. That's interesting, because, you know, most of the cases that we get that challenge the sufficiency of the RFC are quite specific, and they have been raised in specificity below. Are you suggesting that if you just speak in general terms about the RFC at the district court without specifically raising the issues that you're talking about here, that that is sufficient to preserve the issue on appeal? No, Your Honor, and I didn't mean to suggest that. Well, where specifically, then, in the record before the district court did you raise the specific issues that you raised in your appeal to this court? With respect to that, Your Honor, I would rest on my brief as to the specific portions of the record. I don't have anything to add to that. So, in other words, if we look at the record and we don't find these specific points being raised at the district court, does that mean that they're waived? If an argument was not sufficiently raised below that is now being raised on appeal. Yeah, but you're not able to point to specifics in the district court record that would substantiate the fact that you raised the issues that you now raise on appeal. And we're only talking about the sufficient – whether or not the RFC was supported by the district court. Right. That's what we're talking about, yeah. There's other issues that you raised, obviously. Oh, certainly. And I'm not suggesting at all that just arguing below that the RFC was not supported by substantial evidence. So are you conceding that it was supported by substantial evidence, the RFC? No. Sorry, I phrased that wrong. With respect to whether the plaintiff's argument was properly raised in the district court, she did more than just generally argue that substantial evidence did not support the RFC. Okay, where is that in the record? In other words, I don't want to use up all your time on this point. But frankly, I didn't see anything in the district court record that had the kind of specificity that we usually see on a claim of this nature. And so I guess my question – we can look at the record, too, if you have no specific sites to give us. But if we can't find it, do you agree that that issue is waived? Yes, Your Honor, if – yes. So let's get back to – let's get back to Dr. Jensen's findings. I take it what the RFC said was that your client was able to perform small products and their garment sorting jobs. Is that right? Yes. Garment smart – garment sorter and small products. That's correct, yes. So let's assume that Dr. Jensen's findings should have been – should have been posed. And the doctor's – his findings were that your client was unable to frequently climb stairs, stoop, kneel, or crouch. Is that a fair summary of his findings? Yes. Why are those relevant to whether she could perform those two jobs? I think I can't – without actually conceding the point, I believe that the commissioner is right only with respect to Dr. Jensen. Okay. So if the commissioner is correct about – with respect to Dr. Jensen's findings, what's – and put aside the substantial evidence issue for a second, what's your argument about why this ought to be remanded? Putting aside the substantial evidence issue? Right. I understood that you had an independent argument with respect to Dr. Jensen's findings, but you're now telling us you're not pressing that argument. No, I'm not. So what – what other – what's your – what other argument do you have today? Excluding the substantial evidence issue, I can't reasonably – because I – the commissioner, I think, is correct with respect to the harmless question with Dr. Jensen's report. So in effect – and I don't mean to be rude, but in effect, aren't you saying that you recognize that you have no case? You're not contesting the substantial evidence. You're not contesting the RFC on that basis. Then Judge Hurwitz is asking what you've got left, and it sounds like you're saying how much. Oh. Is that correct? No, Your Honor. I think there's a misunderstanding regarding the substantial evidence. Your point is you think you've preserved the substantial evidence argument and that you should win on it. That's correct. And with respect to – again, on the question of whether it was weighed below, the AL – I'm sorry, the U.S. District Court, page 3 of their order, addresses plaintiff's allegations, and the district court says ALJ created RFC using insufficiently specific terms. And the district court then talks about the mild impairment issue, the 80 percent of stamina, which is what I'm raising here. So clearly the court – district court had opportunity and did take that opportunity to address the issue I'm raising here. Yeah. See, but I took that – and I thought you were making a third argument. That's why I'm asking. I took that as you saying the ALJ expressed the RFC in the wrong terms. In other words, that he should have expressed his findings in work-related terms. That's correct. And that he should have said it differently. Not necessarily that there wasn't sufficient evidence to support where he got to, but that his RFC was facially wanting. Is that an argument you're making? Yes. And to – with respect to the substantial evidence argument, I'm arguing that whether the – an argument that the RFC was not supported by substantial evidence is kind of an umbrella challenge to any impropriety in the RFC, because I'm arguing that because the ALJ did not incorrectly, improperly worded the RFC, substantial evidence did not support the ALJ specifically. Okay. So on that issue, tell me why the – what was wrong with the way he worded it. I'm having some difficulty understanding that from your briefing. Certainly. Because it didn't – the RFC should be worded, must be worded in a way that sufficiently relays the claimant's vocational abilities. And the problem in this one is, again, where the ALJ finds a mild impairment. Mild is not a proper RFC term. And because, again, the ALJ conflated pretty much the psychiatric review technique, the paragraph B findings of Step 2 and Step 3 with the RFC. Counsel, let's say that the RFC was inartfully phrased. But the reality is the ALJ concluded that Oliver suffered from fatigue, and that certainly identified a limitation or functional capacity. The RFC refers to capacity to work on a sustained basis. That is, of course, a significant and typical kind of concern in an RFC. And it was in that context that the questions were presented. The finding below, of course, was this was harmless error. Why isn't that harmless error? I mean, it did identify the issues with some specificity, and there were jobs in the marketplace that your client could do, but it didn't mention her limited ability to perform on a sustained basis. What's wrong with that? It's not harmless because it was not sufficiently articulated in work-related terms so as to ensure that the VE and the ALJ had the same understanding. So tell me, this is what concerns me about your argument. I think we probably all agree you don't have to have magic words in the RFC. That's correct. There's no formulaic sort of thing that has to be said. What should the ALJ have said here in the RFC that he didn't? For instance, she has fatigue as a result of depression. He could have said the claimant must take a 10-minute rest on the hour. But the cases don't require that, do they, counsel? I mean, then you're getting back to the magic words thing that Judge Hurwitz talked about. There's no specific language that's required here. Clearly the VE had to know there was a limitation on ability to work on a sustained basis. Clearly that information was there. The VE got that, brought up these potential work situations. These jobs that the VE identified, which of those do you think are simply wrong because of the inartful expression of the RFC by the ALJ? I think the problem is that we don't know. I can't tell you that they're certifiably wrong. Those cases generally require where the VE was cross-examined below. But those cases also require that the hypothetical be insufficient for the VE to reach the conclusion. That's correct. And so, again, I'm having trouble here, given Judge Smith's question. The VE's conclusion was that there were certain jobs that your client could perform. If the hypothetical were phrased differently, is it your position that it would have been reasonable for the VE to conclude otherwise? In other words, what change in the hypothetical would have made the VE's conclusions inappropriate? Because the VE based the finding of these jobs on an RFC that was improperly articulated such that the VE could have had a different understanding. No, I understand. That's your ultimate argument, so let me try one more time. You say the RFC, and therefore the hypothetical, should have been different. What change in it do you think would have changed the VE's conclusion? What was left out of it that should have been there that would have been material to the VE's conclusion? Again, fatigue expressed as a matter of how much time, what that matters as with respect to the job specifically, like extra breaks, for instance. Okay. Okay.  Any other questions? All right. Thank you very much. We'll hear from the Commissioner. Are you going to read from all that stuff? Your Honor, last time I was in front of this Court, I was criticized because I actually left a piece of paper over there.  Well, we won't criticize you for that. May it please the Court, Jordan Goddard, appearing for the Commissioner. Good morning. Ms. Oliver is a woman who has a series of mild impairments. However, they did not add up to disability. The primary issue that she raises is one that is essentially a procedural issue, has to do with the clarity of the language used in the RFC assessment, the residual functional capacity assessment. However, it's important to remember a couple of things. First of all, work-related terms is not an actual term of art that you'll find anywhere in our regulations or in any legal authority. Therefore, if this Court was to adopt Ms. Oliver's position, it would leave the Commissioner in a very difficult position where the Commissioner would have to phrase RFCs in work-related terms, but frankly, we don't know what work-related terms are. What our regulations and our policy guidance actually say is that it has to accurately reflect the evidence. And this ties into the concept of substantial evidence review, because substantial evidence review is a reasonable person's standard. Was the administrative law judge reasonable in the findings that he or she made? Let's just – here's the question I've been trying to get an answer to, and I'm still not sure I have it. Let's assume that there's substantial evidence supporting the RFC, but the hypothetical pose to the V.E. says something like she suffers from fatigue related to depression. Yes. Can a V.E. really conclude whether somebody can perform certain jobs without knowing the level of fatigue or the – how much it will tire her out during the day and whether she needs breaks, et cetera? No, Your Honor. And that's what's great about the inquisitorial system that we have below. The V.E. is actually empowered to ask questions if he or she does not understand. And although we didn't have that in this case, it's not unusual for a V.E. to ask a question back to the judge if they get a hypothetical question with a term that they don't understand. For instance, the V.E. was perfectly capable of saying, I'm not exactly sure what mild means in this. Can you flesh that out for me a little bit more? The V.E. seemed to understand. And if – I think if you look at the hearing transcript, you can see where the specific limitations come from. Dr. Henry, the reviewing doctor for the State agency who assessed the mental limitations, actually limited Ms. Oliver to simple work, which is a very common limitation that we see in cases and is far less specific than the limitations that were assessed here. The ALJ went above and beyond. He could have just gone with simple – a limitation to simple work and simple instructions, but he fleshed it out more. He asked questions of Ms. Oliver at the hearing to get at what her issues were and what her claims were with mental impairment. And she talked a lot about memory, and she talked a lot about concentration, and she talked about her stamina. And so the ALJ made specific assessments in those areas instead of relying on the broader assessment. So the administrative law judge here actually went a step above and beyond and really tried to get a specific RFC that captured the specific area where Ms. Oliver had impairments. And as far as the use of the term mild, the Commissioner concedes that that is not the most artful term that could be used. However, it's not so unclear that we – that it does not allow for judicial review. Isn't it your position that while in isolation that term is more than inadequate, the information that did get into the record that provided definition to what that meant is what makes this harmless error? Yes, Your Honor. That is a more artful way of saying what I was trying to say. Because we look at the totality of the evidence to see if there's substantial evidence, right? Yes. It's a totality of the evidence standard, and you can't just isolate one phrase out of context. And as far as the stamina goes, I hesitate to reference an unpublished decision that came out of this court prior to 2002. No need to. Okay. I think we have an objective standard here, though. The – I'd just like to point out that the stamina is tied into a typical person of her age, so we have sort of a reasonable person standard, an objective standard that the administrative law judge is referring to. So I don't think we have a problem there. I'm not sure there are any other areas that I need to cover, and with that I'll let you go. Well, I just want to make sure I understand the Commissioner's position on the preservation issue. Your position is that the Petitioner in this case waived, or the plaintiff to support the RFC? Yes, with the exception of Dr. Jensen. With the exception of Dr. Jensen, but didn't waive the question of whether or not the hypothetical posed to the V.E. was somehow flawed? Correct. Okay. Okay. Thank you very much. The case is argued as submitted. We thank you both for argument, and the Court stands in recess and, indeed, is adjourned for the week.
judges: Alarcon, Smith, Hurwitz